**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CASSANDRA MATTHEWS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 12-00353-KD-N** |
| | ) | |
| **CITY OF MOBILE,** *et al.,* | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docs. 63-69), Plaintiff's Response (Doc. 80-81), and Defendants' Reply (Doc. 83-84).

**I.      Procedural Background**

On May 24, 2012, Plaintiff Cassandra Matthews ("Matthews") initiated this action alleging claims against the City of Mobile Police Department for Title VII discrimination and retaliation and legal claims in the detail required to allow defendants to Answer and defend against her claims[.]"   (Doc. 22 at 2).    Pursuant to the court's order to clarify her claims, Matthews filed a "Second Amended Complaint (the third version), alleging entirely new claims, allegations and arguments, as well as adding individual defendants (Carla Shumock, Amelia Brown, Joyce Grissett, Jack Dove, Samuel Jones (Mayor, City of Mobile), Ken Williams, and Micheal T. Williams (Chief of Police)) as parties and a $5,000,000 damages claim.   (Doc. 26). Defendants moved to dismiss the MPD, which was granted.   (Docs. 38, 39, 41, 42).   See Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006) (providing that an amended complaint supersedes the initial complaint and becomes the operative pleading in the case such that the original claims are no longer part of a plaintiff's averments against her

adversary).

In her Complaint, Matthews alleges four counts, which she labeled racial discrimination. In Count 1, Matthews cites 42 U.S.C. § 1981 and alleges that she was subjected to a racially hostile work environment. In Count II, Matthews cites Title VII and alleges that because of her race she was; 1) denied a promotion; 2) subjected to a hostile work environment and 3) subjected to adverse employment actions. In Count III, Matthews alleges a violation of the Family Medical Leave Act (FMLA). Finally, in Count IV, Mathews cites 42 U.S.C. § 1983 and alleges that she was suspended, terminated, denied a promotion and retaliated against based on her race.

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters

2

stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). Defendants, as the party seeking summary judgment bear the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

Defendants move for summary judgment on: 1) Matthews' claim of retaliation based on use of medical leave (FMLA) and the filing of an EEOC complaint; 2) Matthews' claim that she was denied a promotion in 2011 based on her race; and 3) Matthews' claim that she received disciplinary reprimands based on her race.

## III.    **Factual Background**

On October 12, 1996, Plaintiff Cassandra Matthews ("Matthews"), an African American female, was hired by the City of Mobile. (Doc. 65-1 at 2; Doc. 81-1 at 1 (Aff. Matthews)). Matthews was initially hired as a Public Safety Dispatcher I ("PSD I") in the Communications Unit of the Mobile Police Department. (Doc. 65-2 at 18 (Dep. Matthews at 60); Doc. 81-1 at 1

3

(Aff. Matthews)).    On August 10, 2002, Matthews was promoted to Public Safety Dispatcher II ("PSD II").    (Doc. 81-1 at 1 (Aff. Matthews)).    From 1996 to August 2010, Matthews' service rating scores did not fall below "Satisfactory" and she often received a score of "High Quality" (while working for approximately six (6) years as a PSD I and eight (8) years as a PSD II). (Doc. 81-1 at 2-3 (Aff. Matthews at ¶¶7-9)).

On January 4, 2011, Matthews received a written notice of disciplinary action by Sgt. Shumock.    This disciplinary action was based on a misconduct report submitted by Sybil Thomas relating to an incident wherein Matthews was printing personal documents in the radio room during a break, which violated orders of her supervisor.    (Doc. 81-1 at 5 (Aff. Matthews); Doc. 66-6 at 2-3 (Aff. Brown); Doc. 67-6 at 2 (Aff. Shumock); (Doc. 67-7 at 2-3 (Aff. Hargrove)).[1]    Per this notice, a Chief's Hearing (disciplinary hearing) was held and on February 15, 2011, Matthews received a three-day suspension (February 21-23, 2011) without pay based on insubordination and failure to obey a direct order.    (Id.)    (Doc. 67-7 at 2-3 (Aff. Hargrove)).

On February 14, 2011, Lt. Stallings contacted Sgt. Shumock with a complaint about Matthews' job performance – that she was continually making units in Precinct 1 "repeat" their "traffic" (last radio transmission).    (Doc. 67-8 at 2-3 (Aff. Stallings); (Doc. 67-5 at 2-3 (3/17/11

---

[1] On October 2, 2010, RCO Sylvia Nettles issued a memo to Matthews' file regarding an incident involving Matthews and a PSD I, a result of which Matthews was advised to cease/desist typing non-police related (personal) information and sending it to the main printer at the Police Department.    (Doc. 67-2).    On October 12, 2010, RCO Joyce Grissett advised all operators on her shift that they are to leave the radio floor when on break. (Doc. 67-3 at 2-3 (Aff. Grissett)).    On October 13, 2010, RCO Grissett observed Matthews using the main printer and questioned her presence in the radio room while on her break; Matthews refused to show Grissett what she had printed (as it was a complaint against Grissett) and was "loud and disrespectful[.]"    (Id.)    (Doc. 81-1 at 4 (Aff. Matthews)).    Grissett snatched the complaint out of her hands.    (Doc. 81-1 at 4 (Aff. Matthews). Matthews returned to work five days later.    (Doc. 81-1 at 4 (Aff. Matthews).    On November 15, 2010, Lt. Thomas completed a Misconduct Report regarding the October 13, 2010 incident between Matthews and Grissett; listing the violation as "minor" and recommending a letter of reprimand to Mathews.    (Id.; Doc. 67-4 (Aff. Thomas)).

4

Misconduct Report); Doc. 67-3 at 3 (Aff. Grissett)).[2] On February 16, 2011, Sgt. Shumock, RCO Joyce Grissettt, RCO Mike Mayo, and Captain Brown met with Matthews to discuss the events, at which time she received verbal counseling that she was creating a dangerous situation by requiring the officers to repeat transmissions. (Doc. 66-6 at 3 (Aff. Brown); Doc. 67-6 at 2-3 (Aff. Shumock); Doc. 67-5 at 3 (3/17/11 Misconduct Report); Doc. 67-3 at 3 (Aff. Grissett)).

On March 6, 2011, a complaint was received from police Lieutenant Scott Davis that Matthews refused to provide information to a police officer who was closest to the call regarding a violent assault and failed to call the victim back as requested by the officer. (Doc. 67-5 at 3-4 (3/17/11 Misconduct Report)). The Lieutenant requested that Matthews be removed from the channel she was assigned. (Id.) When Matthews was relieved of her channel, she failed to provide any information and simply dropped the microphone and walked away. (Id.; Doc. 67-9 at 2-3 (Aff. Turner)).

On March 8, 2011, Matthews refused to simulcast an emergency situation concerning a vehicle pursuit. And on March 9, 2011, failed, when requested by police and while dispatching on Special OPS, to call an impound wrecker to respond to a crisis scene. (Id. at 4-5 (3/17/11 Misconduct Report); Doc. 67-10 at 2-4 (Aff. Dove)). The Lieutenant in charge, Lt. Dove, complained as to Matthews' competence and asked to have her removed from dispatching. (Id. at 5). On March 15, 2011, Matthews failed to notify a PSD I dispatcher that a vehicle chase had been terminated, violating protocol. (Id.; Doc. 67-11 at 2-3 (Aff. Booker)).

On March 17, 2011, as a result of the incidents in February 2011 and March 2011, Sgt.

---

2 Shumock reviewed the recordings with Grissett. (Doc. 67-3 at 3 (Aff. Grissett)). Grissett then met with Matthews and counseled her, documenting the verbal counseling on a Performance Observation. (Id.) According to Matthews, starting on February 15th, Kennedy, Shumock, Grissett, and Brown "started to pad my personnel file with any activity that they could construct in order to take disciplinary action against me….because the RCO vacancy….was open…and they did not want to see me promoted." (Doc. 81-1 at 5 (Aff. Matthews)).

Schumock filed a misconduct report. (Doc. 67-5 (3/17/11 Misconduct Report); Doc. 67-6 (Aff. Shumock)). On April 18, 2011, Mathews was given written notice of disciplinary action with a Chief's Hearing scheduled for May 2, 2011. (Doc. 81-1 (Aff. Matthews)). On May 2, 2011, Matthews had a Chief's Hearing regarding Shumock's Misconduct Report, at which time it was determined that she would be terminated. (Doc. 67-7 at 3 (Aff. Hargrove)).

Matthews appealed her termination to the Personnel Board and on July 26, 2011 the Mobile County Personnel Board entered an Order reinstating her. (Doc. 67-1 at 3-4, 15-24 (Aff. Dees)). While the Board agreed that Matthews was guilty of conduct unbecoming an employee, they modified her punishment to a 58 day suspension and ordered that Matthews undergo mental health counseling. (Id.)

During the course of Matthews' personnel problems,[3] a promotional opportunity arose for Radio Communication Officer ("RCO"), per Announcement No. 13009. (Doc. 66-1 at 2 (Aff. Kennedy); Doc. 67-1 at 1, 3, 10 (Aff. Dees)). The RCO position was open to all regular PDS II employees of the MPD, and no written or oral exam was required. (Id.) Applicants were scored by a Mobile County Personnel Board analyst on the basis of an evaluation of their education, training, experience, and personal qualifications, as reflected in Personnel Board records. (Id.)

On March 18, 2011, the City of Mobile Police Department requested a Certificate of Eligibles, identifying candidates eligible for promotional consideration (based on position requirements), from the Mobile County Personnel Board for the position. (Doc. 84-1; Doc. 67-1 at 1-2, 8 (Aff. Dees)). The names of applicants successfully meeting the position

---

[3] In response to the motion for summary judgment, Matthews does not rebut the accuracy of her disciplinary record. Rather, Matthews summarily states that her supervisors padded her personnel file "with any activity that they could construct in order to take disciplinary action" against her. Doc. 80 at 7.

6

requirements were entered on a list of eligible candidates for the promotion in order of rank according to their final earned score. (Id.) Matthews was placed second on the promotional list. (Id.) (Doc. 67-1 at 12-13 (Rule IX, Certification 9.4 -Mobile County Personnel Board)). After the list was obtained, an oral interview was used to select the individual to be promoted. (Doc. 66-1 (Aff. Kennedy)).

On April 4, 2011, the Promotional Committee conducted interviews of the candidates. According to Deputy Police Chief Joseph Kennedy, oral interviews for the RCO position (#13009) were conducted by an interview panel (Promotional Committee), consisting of Kennedy (Caucasian), Captain DeWayne Hill (African-American), Captain Carla Longmire (African-American), Lt. James Wilson (Caucasian) and Sgt. Carla Shumock (Caucasian). (Doc. 66-1 at 2-3 (Aff. Kennedy)).[4] During the interviews, the panel had access to an information sheet on each applicant including the name, employee number, hiring date, accrued time usage, summary of disciplinary history, and any supervisor recommendation. Each candidate was given 30 minutes to answer a series of 10 questions by the panel members. (Id. at 3-4, 10). Each panel member was given a scoring sheet for each candidate and was tasked with assigning a score for each response to each question. (Id. at 3-4, 11). Interview scores counted as 100% of each candidate's score: "[t]he individuals were chosen for promotion based upon their total interview scores[]"). (Id. at 4-5).

Matthews received a final total score of 40. (Id. at 4, 7, 9, 11). Matthews' scores were determined based on her work, her disciplinary history (1 major, 4 minor and 2 pending major

---

4 See also generally Doc. 66-2 (Aff. Hill); Doc. 66-3 (Aff. Longmire); Doc. 66-4 (Aff. Wilson); Doc. 66-5 (Aff. Shumock); Doc. 66-6 (Aff. Brown) (stating the same information and discussing the interview process and how they scored each candidate).

disciplinary events) as well as her responses to the interview questions. (Doc. 66-1 at 4, 13 (Aff. Kennedy); Doc. 67-12 at 3 (Aff. Little)). Additionally, each candidate's supervisors were asked to submit a recommendation on his/her behalf and Matthews' RCOs, Sylvia Nettles and Joyce Grissett, submitted recommendations. (Doc. 66-1 at 3, 14-18 (Aff. Kennedy)). Grissett stated that Matthews knowledge of the job was "below average," "sometimes gives out inaccurate information," "does not have any supervisory skills," has an unprofessional attitude, does not have a good attitude towards her supervisors, cannot handle corrective criticism, and "until she makes some changes or seeks professional help she will never in my opinion be able to supervise anyone." (Id. at 14-15). Nettles stated that Matthews has "a dreadful attitude which brings down the entire team" and "directs her behavior," as she "does not have any concept of teamwork[]" and provokes her team members and daily displays negative behavior which "affects the moral of the team," is "unpleasant to work with," and said her promotional would be detrimental to the entire Communications Unit as she has "serious deficiencies that I do not believe can be corrected." (Id. at 16-18).

Heidi Robinson received the highest score, an 83.6. (Doc. 66-1 at 4, 7, 9 (Aff. Kennedy)).[5] On April 23, 2011, Heidi Robinson (Caucasian) was promoted to the RCO position. (Doc. 67-1 at 8 (Aff. Dees)). Robinson had 4 minor disciplinary events on her record. (Doc. 66-1 at 21 (Aff. Kennedy); Doc. 67-12 at 3 (Aff. Little)). Robinson also received recommendations for the promotion, stating that she was: "a great asset," "has a thorough and outstanding knowledge and understanding of duties to be performed[,]" "can take as well as follow direction[,]" "has a keen insight as to handling almost any problem[,]" "works

---

[5] Additionally, 4 other candidates received final total scores which were significantly higher than those of Matthews (in the 70s). (Id.)

hard to stay on top of all facets that the job entails[]" and "does a great job in running the RCO's office[]" -- noting that when she has been disciplined "she has always recognized her mistake and has taken criticism constructively[.]" (Doc. 68-7 (Aff. Herrine); Doc. 68-8 (Aff. Spencer-Wilks); Doc. 66-1 at 22-23 (Aff. Kennedy)).

On October 5, 2011, Matthews filed an EEOC Charge (#425-2011-01120), alleging, in part, Title VII race discrimination due to not being promoted in March 2011.    (Doc. 65-1).

IV.    **Discussion**

Matthews' claims are a moving target and have resulted in claims being discussed which are not before this Court.    The undersigned will substantively address only the claims that are alleged in the Complaint, have been presented to the EEOC and have not been abandoned by Matthews.

A.    **Hostile Work Environment**

Matthews' Complaint contains general references to "hostile work environment" in her factual allegations and *within* her Section 1981 and Title VII claims in Counts I and II.    See, e.g., Doc. 26 at 21, 26 at ¶54 and ¶68.    Even assuming that Matthews has sufficiently alleged a hostile work environment claim in her operative Complaint, Defendants contend that she abandoned any such claim on summary judgment by failing to substantively address same in her Response.    (Doc. 83 at 3).    The Court agrees.    See, e.g., Floyd v. Home Depot USA, 274 Fed. Appx. 763 (11th Cir. 2008); Nance v. Maxwell Federal Credit Union, 186 F.3d 1338, 1340 (11th Cir. 1999); Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp., 10 F.3d 1563 (11th Cir. 1994); QBE Ins. Corp. v. Whispering Pines Cemetery, LLC, 2013 WL 673492, *1 at note 1 (S.D. Ala. Feb. 25, 2013).    "There is no burden upon the district court to distill

every potential argument that could be made based upon the materials before it on summary judgment…the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995). Matthews' Response does not contain any argument in opposition to this claim (and/or any substantive discussion), such that *if alleged*, it is deemed abandoned.[6] Moreover, Matthews' EEOC charges make no mention of "hostile work environment." Having failed to raise such a claim in her EEOC charges, she would be barred from alleging them in a Complaint due to her failure to exhaust her administrative remedies as to that claim. <u>See</u>, <u>e.g.</u>, <u>Cotton v. G.S. Dev.</u>, 390 Fed. Appx. 875, 876-877 (11th Cir. 2010).

## B. <u>Retaliation claim based on FMLA leave</u>

Defendants move for summary judgment on Matthews' FMLA claim (Count III), contending that even though sufficiently alleged in her Complaint, she has abandoned this claim. The Court agrees. Matthews' Response does not contain any argument in opposition to this claim (and/or any substantive discussion), such that it is deemed abandoned. <u>See</u>, <u>e.g.</u>, <u>Floyd</u>, 274 Fed. Appx. 763; <u>Nance</u>, 186 F.3d at 1340; <u>Road Sprinkler Fitters</u>, 10 F.3d 1563; <u>QBE Ins.</u>, 2013 WL 673492, *1 at note 1; <u>Resolution Trust</u>, 43 F.3d at 599.

## C. <u>Retaliation for filing EEOC charge</u>

On February 24, 2012, Matthews filed a second EEOC Charge #425-2012-00314, alleging Title VII retaliation for filing her initial October 2011 EEOC Charge, tied specifically to events occurring on January 17, 2012 (i.e., Sgt. Shumock yelling at her, refusing to allow her to use the bathroom, requiring her to ask for permission to use the bathroom, requiring her to find

---

6 On summary judgment, Matthews merely states that she alleged this claim in her Complaint. (Doc. 80 at 1-3).

relief prior to leaving the work area, and requiring her to write a narrative). (Doc. 68-5 at 4). However, Matthews' amended Complaint (Doc. 26) contains no retaliation allegations relating to these January 17, 2012 events. This, even though the Court specifically granted Matthews leave to amend her amended complaint (Doc. 9), to "add[] a claim for retaliation based on a second EEOC Charge." (Doc. 22 at 1). As such, Matthews has not sued Defendants for the retaliation claim tied to the January 17, 2012 events. As a result, this retaliation claim by Matthews is not before the Court in this case.

**D.** **Discrimination based on July 2012 Disciplinary Reprimand and August 2012 Service Rating**

On October 1, 2012, Matthews filed a third EEOC Charge #425-2012-01607, specifically based on a July 18, 2012 letter of reprimand from Captain Amelia Brown and an August 2012 service rating issued by RCO/Supervisor Heidi Robinson. (Doc. 68-6 at 2). Matthews, however, has not sued Defendants based on this Charge (Doc. 26 at 5 at ¶17), and there are no allegations regarding a July 18, 2012 letter or an August 2012 service rating in the Complaint. As such, these allegations contained in this EEOC charge, the EEOC Charge itself, and any claims stemming from same, are simply not before the Court in this case.

**E.** **Retaliation Due to participation as a witness in a discrimination proceeding**

In response to Defendants' motion, Matthews contends that she was retaliated against by the Defendants -- during the April 2011 interview process for the RCO promotion -- because interview panel members knew she had been a witness in a discrimination proceeding (filed by another employee) and had provided information regarding that employee's complaint during the investigation. (Doc. 80 at 16-17). Despite Matthews' assertions, there is no such claim before the Court. Specifically, Matthews did not allege retaliation based on prior participation as a

witness in her Complaint and there is no EEOC Charge of record alleging this manner of retaliation. See, e.g., Cotton, 390 Fed. Appx. at 877 (finding it was "clear from the face of the EEOC charge" that plaintiff failed to mention a particular claim and thus was barred from asserting same). Thus, this retaliation claim is not before the Court in this case.

## F. Discriminatory Termination[7]

In response to Defendants' motion, Matthews argues that her termination was due to unlawful racial discrimination. (Doc. 80 at 18). However, there is no May 2011 discriminatory termination claim before the Court because Matthews did not file an EEOC Charge based on such termination. (Doc. 64 at 18; Doc. 83 at 8). Rather, the only EEOC Charge discussing Matthews' May 2011 termination alleges, specifically, that she was terminated "because of my perceived disability" under the ADA. (Doc. 65-1 at 2). Matthews explained in her EEOC Charge that her ADA disability claim was based on being written up on January 4, 2011 after returning from medical leave and based on being terminated while out on additional medical leave in April 2011. (Id.)

As a general rule, a Title VII plaintiff cannot bring any claim in a lawsuit that was not included in her EEOC Charge. Matthews has not exhausted her administrative remedies as to this termination claim as she has not filed an EEOC Charge for same. See, e.g., Cotton, 390 Fed. Appx. at 877 (finding it was "clear from the face of the EEOC charge" that plaintiff failed to mention a particular claim and thus was barred from asserting same).[8] Thus, Defendants are

---

7 To the extent Matthews argue that she was denied procedural due process in her termination, this claim fails because it was not raised in her complaint.

8 A Title VII plaintiff is precluded from pursuing any claims in a federal court action that are not "like or related" to the claims asserted by the plaintiff in her EEOC charge, or that could not reasonably be expected to arise during the course of the EEOC investigation. Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1569 (11th Cir.1987). Additionally, "[a]lthough [courts] liberally construe EEOC charges that are prepared without the assistance of

12

entitled to summary judgment on Matthews' May 2011 unlawful termination claim based on discrimination (race).

## G.    **Failure to Promote**

Matthews' failure to promote claim is rooted in the EEOC Charge, in which Matthews alleges, in relevant part, discrimination based on race as follows:

> I was hired by the above employer on October 12, 1996 as a Public Safety Dispatcher I. I am currently in the Warrants Department as a Floater … In March 2, 2011, I took a promotional exam and placed number two on the best qualified list. The Respondent selected a White female that placed number five on the list and has less experience … I believe I was overlooked for a promotion because of my race Black … in violation of Title VII of the Civil Rights Act of 1964, as amended …

(Id.) In her Complaint, Matthews alleges that: she "was on a promotional list for RCO," "[t]he RCO promotion list… wherein Plaintiff was ranked number 2…and was the only black out of 7 candidates[,]" "[f]ar less qualified Whites have been promoted over Blacks[,]" "[e]very RCO that has been promoted by…Shumock was White. In 2011, Plaintiff was the only Black on the list and subsequently removed due to the combined efforts of all named Defendants[,]" Shumock "remove[d] her from the promotion list[,]" and she "was denied a promotion to RCO[.]" (Doc. 26 at 6, 13, 15, 26, 27, 29). Matthews asserts violations of Title VII and Sections 1981/1983.

### 1)    **Individual Defendants – Title VII**

Matthews' Title VII failure to promote discrimination claim, as to individual defendants Shumock, Brown, Grissett, Dove, and Ken Williams, lacks merit. Title VII prohibits *an employer* from discriminating "against any individual with respect to his compensation, terms,

---

counsel, 'a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Jerome v. Marriott Residence Inn Barcelo Crestline/AIG, 211 Fed. Appx. 844, 846 (11th Cir. 2006) (quoting Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004)). See also e.g., Green v. Elixir Indus., Inc., 153 Fed. Appx. 838, 840-841 (11th Cir. 2005).

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To the extent Matthews alleges claims against these individual defendants in their individual capacities (see, e.g., Doc. 26 at 2-3, 5 at ¶¶6-10, 16), "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, *regardless* of whether the employer is a public company or a private company." Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) (emphasis in original). See also e.g., Taite v. Alabama Dept. of Personnel, 2012 WL 3631619 (M.D. Ala. Jul. 16, 2012); Hollingshead v. Mobile Cty. Personnel Bd., 2012 WL 1970281, *3 (S.D. Ala. May 10, 2012); Wallace v. UAW Local 1639, 2006 WL 3834272, *2 (S.D. Ala. Dec. 22, 2006). Accordingly, Defendants' motion for summary judgment as to Matthews' Title VII failure to promote claim against individual defendants Shumock, Brown, Grissett, Dove and Ken Williams, is **GRANTED.**

Additionally, to the extent Matthews' alleges Title VII claims against individual defendants Jones and Micheal Williams in their official capacities (see, e.g., Doc. 26 at 2-3 at ¶¶4-5) such claims are redundant as her employer has been named as a defendant. See, e.g., Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1504 (11th Cir. 1995); Portera v. State of Ala. Dep't of Finance, 322 F.Supp.2d 1285, 1287 (M.D. Ala. 2004). Accordingly, Defendants' motion for summary judgment as to Matthews' Title VII failure to promote claim against individual defendants Jones and Micheal Williams, is **GRANTED.**

## 2)    City of Mobile[9]

Turning to the City of Mobile, Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1).[10]   A plaintiff carries the initial burden of establishing a prima facie case of discrimination on the basis of race.   McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Intentional discrimination can be proved through direct evidence, circumstantial evidence, or statistical proof.   Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008).   "Direct evidence of discrimination is 'evidence that, if believed, proves the existence of a fact without inference or presumption.'"   Dixon v. Hallmark Cos., 627 F.3d 849, 854 (11th Cir. 2010) (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004)). There are two ways a plaintiff can prove discrimination through circumstantial evidence: "the three-step, burden-shifting framework … in McDonnell-Douglas ... or … by presenting circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."   Edmond v. Univ. of Miami, 441 Fed. Appx. 721 (11th Cir. 2011).

Under the McDonnell Douglas approach, once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action.   McDonnell Douglas, 411 U.S. at 802; Denney v. City of

_____

9 This Court does not treat Matthews' Section 1981 and/or Section 1983 (equal-protection based) failure-to-promote claim against the City of Mobile separately from her Title VII failure-to-promote claim against the City of Mobile. "Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical ... [and] we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims." Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985).

10 Discrimination claims brought under section 1981 "have the same requirements of proof and use the same analytical framework" as those brought pursuant to Title VII, 42 U.S.C. § 2000e–2(a). Springer v. Convergys Customer Mgmt. Group, 509 F.3d 1344, 1347 n. 1 (11th Cir. 2007).

15

Albany, 247 F.3d 1172, 1183 (11th Cir. 2001).   The employer must "articulate (not prove) some legitimate, nondiscriminatory justification" for the decision.   Ramsay v. Broward Cty. Sheriff's Office, 2008 WL 111304, *7 (S.D. Fla. Jan. 8, 2008).   If the defendant produces such a reason, the burden shifts back to plaintiff to show that the defendant's proffered reason(s) was pretextual. Id.   However, this "framework is not, and never was intended to be, the sine qua non for a plaintiff to survive a summary judgment motion in an employment discrimination case."   Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).   Notwithstanding the absence of any comparative evidence, Matthews' claims may proceed to trial "if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" Id. (internal citations and footnote omitted).   See also Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1255-56 (11th Cir. 2012) (applying Smith to hold an employee "d[id] not have to use the McDonnell Douglas framework to survive summary judgment because the record contain[ed] enough non-comparator evidence for a jury to reasonably infer that [her supervisor] discriminated against [her]").   An inference "is not a suspicion or a guess" but rather "a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact[.]" Smith, 644 F.3d at 1328 at n.25 (citations and internal quotation marks omitted)).

Matthews does not contend that she has direct evidence or statistical proof of discrimination, and the record does not indicate the existence of such.   Thus, Matthews must establish a prima facie case of discriminatory failure to promote due to her race, through circumstantial evidence via either the McDonnell Douglas framework, or by establishing "a

convincing mosaic."[11]

Under <u>McDonnell Douglas</u>, Matthews must first establish a prima facie case of Title VII race discrimination for failure to promote. Matthews must show that: 1) she is a member of a protected class; 2) who sought and was qualified for positions that the City of Mobile was attempting to fill; 3) despite her qualifications she was rejected; and 4) the City of Mobile continued to attempt to fill the positions or in fact filled the positions with persons outside Matthews' protected class. <u>See</u>, <u>e.g.</u>, <u>Harrington v. Disney Regional Ent., Inc.</u>, 276 Fed. Appx. 863, 872 (11th Cir. 2007). For the fourth prong, similarly situated comparators are not necessary; rather Matthews only has to show that the position was filled with a person outside of her protected class. <u>Harrington</u>, 276 Fed. Appx. at 872-873 (citing <u>Walker v. Mortham</u>, 158 F.3d 1177, 1187 (11th Cir. 1998) which explained that erroneous *dicta* via <u>Perryman</u> -- requiring a plaintiff to show that the promoted employee had "equal or lesser qualifications" -- had improperly entered the Eleventh Circuit's articulation of the standard, reiterating that <u>Crawford v. Western Electric Co., Inc.</u>, 614 F.2d 1300, 1315 (5th Cir. 1980) governs).

Matthews alleges that the City of Mobile discriminated against her, due to her race, by failing to promote her to RCO, and by instead promoting someone outside of her protected class. The parties agree that Matthews, an African American, is a member of a protected class. The record indicates that the individual promoted, Heidi Robinson, is Caucasian and is outside of Matthews' protected class. There also does not appear to be any dispute between the parties that Matthews was qualified, but was not hired. Thus, the burden shifts to the City of Mobile to explain why Matthews was not promoted to RCO in 2011.

The City of Mobile states it based its hiring decision solely on an interview process,

---

11 Neither party addressed the "convincing mosaic" route on summary judgment.

described *supra*. Robinson received the highest score whereas Matthews the lowest score. Matthews also had a more significant disciplinary history (1 major, 4 minor and 2 pending major disciplinary events). (Doc. 66-1 at 4, 12-13 (Aff. Kennedy); Doc. 67-12 (Aff. Little)). Additionally, Matthews' supervisors, Sylvia Nettles and Joyce Grissett, submitted recommendations which did not praise Matthews' abilities and which did not recommend her for the promotion. (Doc. 66-1 at 14-15; Doc. 66-1 at 16-18). In contrast, Caucasian candidate Robinson received the highest score, an 83.6. (Doc. 66-1 at 4, 7, 9 (Aff. Kennedy)).[12] Additionally, Robinson had only 4 minor disciplinary events on her record, (Doc. 66-1 (Aff. Kennedy); Doc. 67-12 (Aff. Little)), and received recommendations from her supervisors for the promotion. (Doc. 68-7 (Aff. Herrine); Doc. 68-8 (Aff. Spencer-Wilks)). Thus, the City of Mobile has articulated legitimate non-discriminatory reasons for promoting Robinson to RCO instead of Matthews.

In response Matthews relies on the fact that she was denied the promotion even though she "placed second on the best qualified list."[13] She argues that the process was not fair and asserts that the each interview panel member's rationale for scoring her as they did was not specific enough. The Court disagrees. Defendants have submitted Affidavits from the interview panel members, a racially diverse panel, explaining how they scored each candidate, and attaching their interview score sheets (as well as any notes any of the members took during the interview process). Matthews has not submitted any evidence to indicate that the scoring

---

12 Additionally, 4 other candidates received final total scores that were significantly higher than those of Matthews (in the 70s). (<u>Id</u>.)

13 In her Complaint, Matthews alleged that she "was on a promotional list for RCO[,]" "[t]he RCO Promotion list was issued on March 1, 2011, wherein Plaintiff was ranked number 2 on the promotion list and was the only black out of 7 candidates[,]"and [[i]n 2011, Plaintiff was the only Black on the list and subsequently removed[,]" (Doc. 26 at 6, 13, 15 at ¶20, 35, 38).

18

process was based on race. In sum, Matthews simply argues, generally, that based on her opinion, the panel members should not have scored her as low as they did.

However, Matthews "cannot merely quarrel with the wisdom of the employer's reason, but 'must meet the reason head on and rebut it.'" Moore v. Jefferson Cty. Bd. Of Educ., 2012 WL 3030109, *7 (N.D. Ala. Jun. 11, 2012)). Courts are not concerned with whether an employment decision is prudent or fair, only with whether it was motivated by unlawful animus; for instance, an employer may fire an employee for a reason based on *erroneous facts* or for no reason at all, so long as the action is not for a discriminatory reason. Pitts v. Housing Auth. v. City of Huntsville, AL, 262 Fed. Appx 953 (11th Cir. 2008) (emphasis added). A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis added). "Subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions[;]" federal courts do not sit as super-personnel departments that reexamine an entity's business decisions…" Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991). Accordingly, as Matthews has failed to offer evidence that the decision makers' explanations are pretext for race discrimination, she has failed to meet her burden.

Even discarding McDonnell Douglas, the Court is unable to piece together a "convincing mosaic" from the circumstantial evidence on record from which a reasonable jury could infer an unlawful discriminatory intent in the City of Mobile's failure to promote Matthews. *Cf.* Davis v. Dunn Constr. Co., Inc., 2012 WL 1952125, at *15 (N.D. Ala. May 24, 2012) ("In [Smith], [644 F.3d 1321] the 'convincing mosaic of circumstantial evidence' was extensive: there was a

documented history of disparate treatment of Caucasian and African–American employees, a spreadsheet listing the employees by name and race that the defendant's disciplinary review committee used to make discipline decisions, and a news program reporting the defendant's struggles with racism in the workplace[]").   The record lacks examples of overt racial hostility or historical evidence of racial disparity at the MPD, and Matthews does not even detail any racial events surrounding the interview process.   Testimony by the Promotional Committee panel members reveals further, that the decision not to promote Matthews was based on non-racial factors.   Put simply, "'[t]he ultimate burden of persuading the trier of fact that the defendant is intentionally discriminating against the plaintiff remains at all times with the plaintiff[,]'" and Mathews has failed to present sufficient evidence from which a trier of fact could reasonably find for her on her failure to promote claim.   Wilson, 376 F.3d at 1086.

Accordingly, Defendants' motion for summary judgment, on Matthews' March 2011 failure to promote claim against the City of Mobile, is **GRANTED.**

### 3)     Individual defendants – Section 1981/1983

Moreover, as for Matthews' Section 1981 and Section 1983 claims against the individual defendants, Defendants moved for summary judgment on the basis that they are entitled to qualified immunity.   (Doc. 64 at 37-40).   Matthews failed to rebut or even address qualified immunity in her Response.   Qualified immunity protects government officials performing discretionary functions from liability in their individual capacity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Hope v. Pelzer, 536 U.S. 730, 739 (2002).   Regarding discretionary functions, the inquiry concerns whether the acts in question are of a type that fell within the defendant's job

responsibilities, and asks whether the defendant was performing a legitimate job-related function through means that were within his or her power to utilize.  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265-1266 (11ᵗʰ Cir. 2004).  Once a defendant establishes this, the plaintiff has the burden of establishing that qualified immunity is not appropriate.  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11ᵗʰ Cir. 2002).  Matthews must show: 1) that the defendants infringed a right protected by a statute or the constitution, and 2) that such right was clearly established at the time of the alleged violation.  Holloman, 370 F.3d at 1264.

The record supports a finding that the individual defendants are entitled to qualified immunity.  First, according to the Defendants, Mayor Jones, Police Chief Micheal Williams, and Amelia Brown were Matthews' upper level supervisors.[14]  (Doc. 64 at 38).  Matthews has not shown that they were on notice of any alleged unconstitutional action to then place them on notice of any need to correct/stop a subordinate's conduct.  See, e.g., Cottone v. Jenne, 326 F.3d

_____

14  As explained in See, e.g., Cottone v. Jenne, 326 F.3d 1352, 1360-1361 (11ᵗʰ Cir. 2003):

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); *Gonzalez,* 325 F.3d at ——, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez,* 325 F.3d at ——, 2003 WL 1481583, at *5; *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez,* 325 F.3d at ——, 2003 WL 1481583, at *5 (quoting *Braddy v. Fla. Dept. of Labor & Employment,* 133 F.3d 797, 802 (11th Cir.1998)); *Brown,* 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's " 'custom or policy ... result[s] in deliberate indifference to constitutional rights' " or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez,* 325 F.3d at ——, 2003 WL 1481583, at *5 (quoting *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991)); *Hartley,* 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale,* 7 F.3d 1552, 1560–61 (11th Cir.1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez,* 325 F.3d at ——, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

1352, 1362 (11th Cir. 2003) (finding that plaintiffs failed to establish the necessary causal connection between the supervisors and unconstitutional conduct for supervisory liability to be imposed); Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (finding that due to the absence of any causal connection between the allegedly wrongful conduct and supervisors, there was no basis for liability).   Second, as to any of the individual defendants, there has been no showing of any constitutional violation relating to Matthews denial of a promotion.   Instead, as discussed *supra*, the evidence demonstrates that Matthews was not promoted in March 2011 due to factors unrelated to her race.   Moreover, Matthews has not disputed that these individual defendants are entitled to qualified immunity.   As such, Defendants' motion, on Matthews' Section 1981/1983 March 2011 failure to promote claims against the individual defendants, is **GRANTED.**

## V.   <u>Conclusion</u>

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment (Docs. 63-69) is **GRANTED.**

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the <u>Federal Rules of Civil Procedure</u>.

**DONE** and **ORDERED** this **31**[st] day of **October 2013.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**